UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DELAINE JAMIE BALDWIN, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:12-cv-243 (JCH) |
| | : | |
| LEO ARNONE, et al., | : | FEBRUARY 15, 2013 |
| Defendants. | : | |

**RULING RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT (Docs. No. 50, 52)**

**I.    INTRODUCTION**

The plaintiff, Delaine Jamie Baldwin, alleges in his Amended Complaint that the

defendants[1] violated his Fourteenth Amendment right to due process at a disciplinary

hearing and discriminated against and harassed him because of his race and religion.

He asserts claims for violation of his rights under the First, Fourth, Eighth and

Fourteenth Amendments and the Religious Freedom Restoration Act.  Pending are

cross-motions for summary judgment.  For the reasons that follow, the plaintiff's Motion

is denied and the defendants' Motion is granted.

**II.    BACKGROUND**

A.    Plaintiff's Motion for Summary Judgment

The defendants contend that the plaintiff's Motion for Summary Judgment must

be denied because the plaintiff has not complied with court rules.  Rule 56(a)1, D. Conn.

L. Civ. R., requires that a motion for summary judgment be accompanied by "a

document entitled 'Local Rule 56(a)1 Statement,' which sets forth in separately

---

[1]The remaining defendants are Warden Brighthaupt, Captain Danya Baker, Lieutenant Hogan, Correctional Officer Johnson, Hearing Officer Harpin, Correctional Officer Reginald Cummings and South District Administrator Angel Quiros.

numbered paragraphs meeting the requirements of Local Rule 56(a)3 a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried."  Rule 56(a)3 requires that each statement in the Rule 56(a)1 Statement "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."

The plaintiff has not complied with this requirement.  Accordingly, his Motion for Summary Judgment is denied.  The court will consider the plaintiff's arguments and the exhibits filed in support of his Motion for Summary Judgment in conjunction with the defendants' Motion for Summary Judgment.

III.    **STANDARD OF REVIEW**

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law.  See Rule 56(a), Fed. R. Civ. P.; In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  The moving party may satisfy his burden "by showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  Merely verifying the allegations of the complaint in an affidavit, however, is

insufficient to oppose a motion for summary judgment.  Zigmund v. Foster, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment.  Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).

## IV.    STATEMENT OF FACTS[2]

The plaintiff has been admitted to prison and transferred among correctional facilities numerous times between August 1984 and March 2009.  On numerous occasions, the plaintiff underwent inmate orientation during which he received instruction on inmate grievance procedures.  On several occasions, the plaintiff received

---

[2]The facts are taken from the defendants' Local Rule 54(a)1 Statement and the exhibits provided by both parties.  Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party.  Each admission or denial must include a citation to an affidavit or other admissible evidence.  In addition, the opposing party must submit a list of disputed factual issues.  See D. Conn. L. Civ. R. 56(a)2 & 56(a)3.

Despite receiving notice of his obligation to respond to the defendants' Motion for Summary Judgment and the contents of a proper response, the plaintiff has not provided a proper Local Rule 56(a)2 Statement in opposition to the defendants' Motion.  He only submits a list of disputed factual issues.  See Doc. No. 57.  Accordingly, the defendants' facts are deemed admitted.  See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.").

an Inmate Handbook which included an explanation of inmate grievance procedures. Upon the plaintiff's arrival at Cheshire Correctional Institution in March 2009, he received an Inmate Handbook.  Although he signed a document acknowledging receipt, the plaintiff stated at his deposition that he did not remember either attending inmate orientation or receiving the handbook.  While incarcerated, the plaintiff has filed inmate grievances and lawsuits in state and federal court.

During the time relevant to this action, the plaintiff was confined at Cheshire Correctional Institution serving a fifteen-year sentence for robbery.  He had previous disciplinary charges for possession of contraband.  The plaintiff alleges that he is very religious and prays every morning.  At Cheshire Correctional Institution, he kept a Bible, bread, and an open cup of Kool-Aid at the end of his bed.  He used the bread and Kool-Aid for daily communion.  The plaintiff would add Kool-Aid to the cup when inmates were fed in their cells.  During the sixty-one days preceding the incident underlying this action, the plaintiff claims to have been fasting and praying with others in the prison Christian community.  The prison chaplain was unaware of this practice.

On November 8, 2011, correctional staff inspected all of the cells at Cheshire Correctional Institution.  When they searched the plaintiff's cell, he and his cellmate were in the day room out of sight of the cell.  The plaintiff was called back to his cell to retrieve his mattress.  The plaintiff alleges that he saw his cellmate's "stinger" on the floor.  A stinger is a contraband item used by inmates to heat water.  The plaintiff believes that defendant Cummings, the correctional officer searching his cell, must have seen the stinger and claims that his cellmate was concerned about staff finding the stinger.  The cellmate states that he did not see a stinger on the cell floor or anywhere

4

else.  Defendant Cummings does not recall seeing a stinger in the plaintiff's cell.

Defendant Cummings asked the plaintiff if he used the top bunk.  When the plaintiff said, "Yes," defendant Cummings asked the plaintiff if the cup was his.  The plaintiff again said, "Yes."  The plaintiff's cellmate stated that, at the time of the search, the liquid in the cup had "turned" and emitted a foul smell.  Defendant Cummings stated that the cup contained "pruno," a type of liquor inmates create from various ingredients that are fermented.  The plaintiff denied that the cup contained pruno and stated that it was juice that he had saved from prior meals.  During his deposition, the plaintiff conceded that the juice had fermented., but disagreed it was pruno.

Defendant Cummings prepared an incident report indicating that he had found a cup of red liquid with a strong aroma of pruno in the plaintiff's cell and that the plaintiff had claimed ownership.  Defendant Johnson did not participate in the search, but smelled the liquid and confirmed the foul odor.  The plaintiff received a disciplinary report for possession of an intoxicating substance.

Defendant Johnson investigated the incident.  The plaintiff told defendant Johnson that he did not want to plead guilty and gave a statement of his version of the incident.  He requested as witnesses his cellmate, two tiermen who gave him the Kool-Aid, and the prison chaplain who would testify about the fasting, prayer, and communion activities of the Christian community.  Defendant Johnson offered the plaintiff his choice of three staff members to serve as his advocate.  The plaintiff declined all three and stated that he would represent himself.

The disciplinary hearing was held on November 16, 2011.  Defendant Harpin was the hearing officer.  The plaintiff presented his verison of the incident and a statement

from his cellmate.  The plaintiff admitted that the juice belonged to him.  He also suggested at the hearing that the juice may have fermented.  Based on the admission that the cup belonged to the plaintiff and staff statements, defendant Harpin found the plaintiff guilty of the charge.  Defendant Harpin revoked ten days of good time credit, also know as Risk Reduction Earned Credit, deemed the plaintiff ineligible to accrue five days of good time credit for the month of November 2011, and imposed sanctions of fifteen days confinement in punitive segregation, thirty days loss of recreation, and ninety days loss of telephone privileges.

The plaintiff was confined in segregation from November 8, 2011, through November 23, 2011.  The cells in the segregation unit are the same size as cells in general population.  In both areas, inmates may be permitted to use a day room.  While inmates in segregation receive the same quality and quantity of food as general population inmates, segregation inmates cannot leave their cells other than for a one-hour period of indoor recreation during the week and for showers at least three times per week.  They cannot attend any rehabilitative programs or religious services, or hold prison jobs.  They are allowed only limited personal property but can send mail and file inmate grievances.  Segregation inmates may meet with clergy daily in their cells or the unit day room.  They have contact only with their cellmates, cannot use the telephone or watch television, and must eat their meals in their cells.

Inmates in general population eat in the prison dining hall, can keep personal property in their cells, including televisions and music disc players, can make telephone calls, send and receive mail, make purchases from the commissary, watch television and have visitors.  They are entitled to daily showers, can attend religious services and

6

rehabilitative programs with other inmates, and can hold prison jobs. They also attend group recreation at least three times per week.

On December 8 and 14, 2011, the plaintiff wrote to Deputy Warden Powers asking about the status of his grievance regarding the disciplinary hearing. On December 15, 2011, Deputy Warden Powers received the second request and became involved. The plaintiff was called to the grievance coordinator's office and provided assistance in properly submitting his grievance. In the new grievance form, the plaintiff indicated that he was filing a grievance because he was not allowed all requested witnesses, the liquid was not tested, defendant Johnson was involved in the search and the hearing, and he was not provided a statement of the reasons for the guilty finding. The plaintiff also indicated that he was appealing the disciplinary finding because his right to due process was violated in several ways. Defendant Quiros found no due process violations and denied the appeal.

In January 2012, the plaintiff commenced a state habeas action complaining of discrimination based on race and religion relating to the November 8, 2011 search of his cell. The issues raised in the habeas petition include many of the claims in this action.

## V.    DISCUSSION

The defendants move for summary judgment on five grounds: (1) the case should be dismissed for abuse of judicial process; (2) the plaintiff failed to exhaust his administrative remedies on the claims of discrimination and harassment; (3) there is no evidence to support the claims of discrimination and harassment; (4) the due process claims are barred under Heck v. Humphrey, 512 U.S. 477 (1994); and (5) the plaintiff did not suffer an atypical and significant hardship to support a claim for denial of due

process.

In opposition to the defendants' Motion, the plaintiff argues that the court should not consider the Motion because he has not received responses to all of his discovery requests.[3]  Rule 56(d) of the Federal Rules of Civil Procedure considers the situation when the non-moving party can show by affidavit or declaration that, for specified reasons, he cannot present facts essential to justify his opposition.  The plaintiff has provided a reason, but fails to identify any facts he cannot present to address the arguments asserted by the defendants.  As these arguments are mainly procedural, the court fails to see how the lack of information going to the merits of his claims would prevent the plaintiff from properly opposing the defendants' Motion for Summary Judgment.  Accordingly, the court concludes that application of the relief specified in Rule 56(d) is not warranted.

A.      Abuse of Judicial Process

The defendants first move to dismiss the case because the plaintiff was not truthful in completing the Amended Complaint.  The plaintiff commenced this action in February 2012.  When he filed his Amended Complaint in June 2012 on the court's form, the plaintiff indicated that he had not begun any other lawsuits in state or federal court regarding the same facts alleged in this action.  He also left blank the section

---

[3] The court is aware that Baldwin filed a Motion to Compel (Doc. No. 49), which has not yet been acted on.  In his Motion, Baldwin requests employment records for the defendant guards as well as any grievance reports filed by other inmates against those guards.  The court does not see how those documents, if they exist, would provide evidence to create material issues of fact in connection with his opposition to the defendants' Motion for Summary Judgment, or to justify granting his Motion.

requiring him to list any previous lawsuit, unrelated to this action, that he filed in federal court within the pervious ten years.  <u>See</u> Doc. No. 22, at 9.  The plaintiff declared under penalty of perjury that all statements in the Amended Complaint were true and correct. <u>See</u> Doc. No. 22, at 11.

The defendants have provided a copy of a state habeas action dealing with the same facts as this case.  The state habeas action was filed in January 2012, just weeks before the plaintiff commenced this action.  A search of court records also reveals three unrelated federal cases filed by the plaintiff during the last ten years.  Defendants' attorney explored these deficiencies with the plaintiff during his November 2012 deposition.  <u>See</u> Doc. No. 52-3, Defs.' Mem. Ex. B, at 42-45.  The plaintiff conceded his error and stated that he forgot about the prior cases.  Despite being informed of the false statement, the plaintiff has taken no steps to correct the error.

Other courts have dismissed complaints under similar circumstances.  One court noted that litigating in bad faith or engaging in manipulative tactics warrants dismissal under 28 U.S.C. § 1915, and sanctions for knowingly filing pleadings containing false contentions under Fed. R. Civ. P. 11.  <u>See</u> <u>Glenn v. Gillis</u>, No. 5:12-cv-133-RS-GRU, 2012 WL 3240674, at *2 (N.D. Fla. Jul. 11, 2012) (prisoner's claim that he forgot about prior cases because prison lost the file containing his litigation history insufficient to excuse failure to report previously filed cases), <u>report and recommendation adopted by</u> 2012 WL 3241138 (N.D. Fla. Aug. 9, 2012); <u>see also</u> <u>Redmon v. Lake County Sheriff's Office</u>, No. 10-11070, 2011 WL 576601 (11th Cir. Feb. 10, 2011) (affirming dismissal of prisoner's civil rights complaint that did not disclose prior lawsuit because prisoner claimed to have misunderstood the form).  Although <u>pro se</u> litigants are held to a less

stringent standard than attorneys, <u>pro se</u> status has never excused mistakes regarding procedural rules, <u>see</u> <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993), or making false statements.

The complaint form used in <u>Glenn</u> included language warning the inmate that failure to disclose all prior civil cases may result in the dismissal of the case.  2012 WL 3240674, at *1.  The Amended Complaint form the plaintiff completed contained no similar warning.  Although the plaintiff is a college graduate, <u>see</u> Doc. No. 52-3 at 9, and should understand both the directions on the complaint form and the meaning of a declaration under penalty of perjury, he was not specifically warned that the case could be dismissed if he failed to comply with the court's procedural rules.  Accordingly, the court declines to dismiss the case for abuse of judicial process.  The plaintiff is now on notice, however, that any future noncompliance with court rules in this case, or any other case he files, may result in the dismissal of a case.

    B.   <u>Exhaustion of Administrative Remedies</u>

The defendants next argue that summary judgment should be granted on all claims, other than the due process claims regarding the disciplinary hearing, because the plaintiff failed to exhaust his administrative remedies with regard to these claims.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions."  The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, regardless of whether the inmate may obtain the specific relief he desires through the administrative process.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006).  Inmates must

10

properly exhaust their administrative remedies.  This requirement includes complying with all procedural requirements, including filing deadlines, so the inmate's issue is reviewed on the merits.  See id. at 90, 94-95.  The inmate must exhaust his administrative remedies with regard to each claim he asserts in his federal complaint. See, e.g., Ortiz v. McBride, 380 F.3d 649, 653-54 (2d Cir. 2004) (concluding that inmate failed to exhaust Eighth Amendment claim because inmate grievance did not mention that claim), cert. denied, 543 U.S. 1187 (2005); Turner v. Goord, 376 F. Supp. 2d 321, 325 (W.D.N.Y. 2005) (citing cases to support position that inmate must exhaust administrative remedies on all asserted claims and permitting a lawsuit to proceed on unexhausted claims would "make a 'mockery of the exhaustion requirement'"). Exhaustion of administrative remedies may be excused only if administrative remedies are not available to the inmate, where prison officials actively interfere with the inmate's ability to invoke his administrative remedies or where special circumstances exist.  See Hemphill v. State of New York, 380 F.3d 680, 686 (2d Cir. 2004).

The definition of grievable matters encompasses the plaintiff's claims of discrimination, harassment, and fabrication of evidence.  See Doc. No. 53-13, Defs.' Mem. Ex. L, Administrative Directive 9.6, § 4, effective October 1, 2011.  Directive 9.6, Section 6(A), requires that the inmate attempt to resolve the matter informally before filing a grievance.  If this process is unsuccessful, or the inmate has not received a response to his attempt at informal resolution, Section 6(C) allows him to proceed to the next step, to file a grievance.  The grievance must be filed within thirty days of the occurrence giving rise to the grievance and must be placed in the Administrative Remedies Box for collection.

11

The plaintiff attended several inmate orientations and received inmate handbooks which contained an explanation of the grievance procedure.  He most recently received a handbook in March 2009, when he arrived at Cheshire Correctional Institution.  He filed more that one inmate grievance while incarcerated.  The plaintiff also has filed lawsuits in federal court and acknowledged at his deposition that he was required to exhaust his administrative remedies before filing those lawsuits.  Finally, when the plaintiff filed an Inmate Request prior to commencing this action, he used the proper form.  Thus, the plaintiff was aware of the need to exhaust his administrative remedies and the procedures to do so.

Prior to commencing this action, however, the plaintiff sought administrative relief only with regard to his due process claims, namely, that he was denied the right to call witnesses at his disciplinary hearing, assistance in preparing for the hearing, a written statement of the reasons for the guilty finding, a fair and impartial decision-maker, and his request to have the cup of juice presented at the hearing.  The plaintiff also argued that he was found guilty based on a vague statement that he possessed red liquid in a cup that smelled like pruno.  The plaintiff did not utilize his administrative remedies with regard to any other claims included in the amended complaint.

At his deposition, the plaintiff conceded that no correctional staff member prevented him from filing a grievance regarding the other issues.  See Doc. No. 52-3, at 60.  Although the plaintiff claimed to have grieved some of the other issues, he has presented no evidence to support this claim or show that he made any attempt to exhaust his administrative remedies on the other claims.  The defendants have submitted a copy of the Cheshire Correctional Institution grievance log which shows that

12

the plaintiff filed only the December 16, 2011 administrative remedy form.  See Doc. 52-9, Defs.' Mem. Ex. H, at 7.  The plaintiff has submitted no evidence in opposition to the defendants' Motion for Summary Judgment establishing any special circumstances to excuse the exhaustion requirement.  In fact, he does not address this argument in his Memorandum.  The defendants' Motion for Summary Judgment is granted as to all claims except the due process claims identified above.

      C.    Due Process Claims

      The defendants next argue that the plaintiff's due process claims are barred and that the plaintiff has not established that he was subjected to an atypical and significant hardship as a result of the disciplinary finding.

      Prisoners must use habeas corpus remedies when they challenge the validity or duration of their confinement.  In addition to precluding a direct challenge under section 1983, the Supreme Court also precludes a section 1983 action for damages where success in the section 1983 action would necessarily imply the unlawfulness of a conviction or sentence.  Such claims are not cognizable until the conviction or sentence has been invalidated or called into question by, for example, issuance of a writ of habeas corpus.  See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  This holding has been extended to cases challenging prison disciplinary procedures where the guilty finding resulted in the loss of earned good time credit.  See Edwards v. Balisok, 520 U.S. 641, 646 (1997).  Therefore, "a state prisoner's § 1983 action is barred (absent prior invalidation)–no matter the relief sought, (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)–if success in that action would necessarily demonstrate the invalidity of

confinement or its duration."   Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

Prisoners often receive mixed sanctions at a disciplinary proceeding, some affecting the conditions of confinement and others the duration of confinement.  The Second Circuit permits an inmate to proceed on a challenge to the sanctions affecting the conditions of his confinement without satisfying the favorable termination rule established in Balisok only if he permanently foregoes any challenge to the sanctions affecting the duration of his confinement.  See McEachin v. Selsky, 225 Fed. App'x 36, 37 (2d Cir. 2007).

As a result of the disciplinary proceeding being challenged, the plaintiff lost ten days of earned good time credit and was prevented from earning five more days.  He also was sanctioned to fifteen days confinement in punitive segregation, thirty days loss of recreation and ninety days loss of telephone privileges.  Thus, he received mixed sanctions.  As the claim stands, it is precluded by Balisok because the plaintiff has not shown that he has successfully challenged the disciplinary finding.

Under McEachin, the plaintiff should be offered the opportunity to waive all claims relating to sanctions affecting the duration of confinement.  The court need not offer that opportunity in this case because, even if the plaintiff were to agree to a waiver, summary judgment is warranted on the remaining claims.

In Sandin v. Connor, 515 U.S. 472 (1995), the Supreme Court considered the requirements to state a claim for denial of procedural due process.  The Supreme Court held that the plaintiff must demonstrate both a protected liberty or property interest and that he had been deprived of that interest without being afforded due process of law.  To establish a protected liberty or property interest, the plaintiff must show that the state

14

created a liberty interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship.  See Tellier v. Fields, 280 F.3d 69, 81 (2d Cir. 2000).

The Sandin decision holds that confinement in the restrictive housing unit for thirty days for disciplinary reasons did not implicate a constitutionally protected liberty interest.  515 U.S. at 485-86.  Further, the Second Circuit has held that confinement in restrictive housing for less that 101 days does not constitute an atypical and significant hardship sufficient to state a claim under Sandin.  See Sealey v. Giltner, 197 F.3d 578, 589 (2d Cir. 1999) (finding that 101-day confinement in restrictive housing, while "doubtless unpleasant," did not constitute atypical and significant hardship);  Lewis v. Sieminski, No. 3:08-CV-728(JCH), 2010 WL 3827991, at *6 (D. Conn. Sept. 22, 2010) (noting that "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under Sandin");  see also Frazier v. Coughlin, 81 F.3d 313, 317-18 (2d Cir. 1996) (holding that twelve day confinement in segregation, followed by eleven month confinement in close supervision unit did not state a cognizable claim for denial of due process); Riddick v. Arnone, No. 3:11cv631(SRU), 2012 WL 2716355, at *4 (D. Conn. Jul. 9, 2012) (holding that ten-day confinement to quarters without showers, telephone usage or hygiene products is not an atypical and significant hardship).

The plaintiff spent fifteen days in segregation.  As the Second Circuit has held that such a brief confinement in restrictive housing does not constitute an atypical and significant hardship, this sanction is insufficient to support a claim for denial of due

15

process.  The additional sanctions of thirty days loss of recreation and ninety days loss of telephone privileges, imposed after the plaintiff returned to general population, do not alter this determination.  See Young v. Shipman, No. 3:03-CV-551(RNC), 2007 WL 1064316, at *1 (D. Conn. Mar. 30, 2007) (sanctions of ten days in punitive segregation followed by fifteen days confinement to quarters and fifteen days confinement to quarters with ninety days' loss of telephone privileges did not constitute atypical and significant hardship to raise due process claim under Sandin); see also, e.g., Lewis v. Dretke, 54 Fed. App'x 795 (5th Cir. 2002) (holding that thirty days of cell and commissary restrictions, ninety days loss of telephone privileges, fifteen days of solitary confinement, reduction in classification status, and a change of custody level from minimum to medium did not implicate any constitutionally protected liberty interests); Davis v. Smalls, 2010 WL 5887815, at *4 (S.D. Cal. Dec. 15, 2010) (holding that loss of telephone and yard privileges are not the type of restrictions that would constitute an atypical and significant hardship to support a due process claim under Sandin).  Plaintiff did not suffer an atypical and significant hardship.  Accordingly, the defendants' Motion for Summary Judgment is granted as to the due process claims.

## VI.    CONCLUSION

The plaintiff's Motion for Summary Judgment (Doc. No. 50) is **DENIED**.  The defendants' Cross-Motion for Summary Judgment (Doc. No. 52) is **GRANTED**.  The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED.**

Dated this 15th day of February 2013, at New Haven, Connecticut.


_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge